IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KAREN MARIE WERMERS, | ) | |
| | ) | |
| Plaintiff, | ) | 8:06cv539 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| TENENT HEALTHCARE CORPORATION, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the following pending motions: (1) Filing No. 8, the Motion to Dismiss filed by defendant, Creighton Saint Joseph Regional Healthcare System, LLC, d/b/a Creighton University Medical Center ("Creighton"); (2) Filing No. 11, the Motion to Dismiss filed by defendant, Tenet Healthcare Corporation ("Tenet"), (3) Filing No. 14, the Motion to Dismiss filed by defendant, the United States of America; and (4) Filing Nos. 18 and 19, the Requests for Production filed by the plaintiff, Karen Marie Wermers. After the plaintiff filed this action in the District Court of Douglas County, Nebraska, the United States removed the case to this court pursuant to 28 U.S.C. § 1442(a)(1) (authorizing removal of a suit against the United States).

**Background**

The plaintiff alleges in her complaint that beginning in 2001, the United States subjected the plaintiff to unlawful surveillance, falsification of evidence, mutilation and invasion of her house and body, without probable cause, in violation of the Fourth Amendment to the U.S. Constitution. In addition, in January of 2004, Creighton and Tenet caused the plaintiff to be tranquilized without her consent or knowledge, after which laser

1

procedures were performed removing her internal reproductive organs and implanting a monitoring device. The actions were taken, and the plaintiff's medical records were falsified, after the plaintiff had learned that "something was wrong" with the education and welfare of the plaintiff's son, Nicholas Wermers.  In 2000, the plaintiff had accused officials of the Sioux City public schools, the Area Education Agency, the State of Iowa and the United States of improper conduct as to Nicholas. Also, the United States coveted a trade secret developed by the plaintiff.

In Filing No. 16, the plaintiff elaborates that, notwithstanding the surgery in 2004 involving removal of her internal organs and implantation of a monitoring device, the plaintiff did not become aware of those events until 2006, when she viewed an x-ray of her abdomen and discovered the GPS implant.  She had gone to the hospital for other reasons relating to her eye in 2004, but she had also experienced some lethargy which the plaintiff later attributed to gases pumped into her apartment through holes drilled by persons unknown in the ceiling.  At any rate, although she voluntarily went to the hospital in 2004 because of her eye, the plaintiff did not consent to the laser procedures on her abdomen and vaginal area, and so she seeks damages for medical malpractice from Creighton and Tenet. The plaintiff also seeks damages from the United States for the deprivation of her constitutional rights.

## Sovereign Immunity

The plaintiff's claim against the United States must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  "Under the doctrine of sovereign immunity, the United States is immune from suit unless it consents to be sued .... This consent must be unequivocally expressed in statutory text ... and the scope of a sovereign immunity waiver is strictly

construed in favor of the sovereign."  Miller v. Tony and Susan Alamo Foundation, 134 F.3d 910, 915 (8th Cir. 1998).   It is well established that, absent an express waiver, the doctrine of sovereign immunity bars a plaintiff's claim for money damages against the United States, its agencies, and its officers in their official capacities.  See, e.g., FDIC v. Meyer, 510 U.S. 471, 475 (1994); United States v. Sherwood, 312 U.S. 584, 586 (1941).  "Sovereign immunity is jurisdictional in nature."  FDIC v. Meyer, 510 U.S. at 475, *citing* United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction").

The jurisdictional bar of sovereign immunity operates when a suit threatens to impose liability on the United States for money or property or to engender some form of coercive injunctive relief.  See, e.g., Dugan v. Rank, 372 U.S. 609, 620 (1963): "The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' Land v. Dollar, 330 U.S. 731, 738 ... (1947), or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'  Larson v. Domestic & Foreign Corp., *supra*, 337 U.S. at 704 ... ; Ex parte New York, 256 U.S. 490, 502 ... (1921)."

Although the United States has consented to suit under the Federal Tort Claims Act ("FTCA"), the FTCA does not provide a jurisdictional basis for this case.  Under the FTCA, the United States waives its sovereign immunity for damages claims regarding "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be

liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  If the United States could somehow be considered both negligent and responsible for the medical care provided to the plaintiff in 2004, the FTCA provides a remedy only if a plaintiff first files an administrative claim pursuant to 28 U.S.C. § 2675(a).  The plaintiff does not claim to have done so.

### Statute of Limitations

Creighton and Tenet move for dismissal of the plaintiff's complaint as to them on the basis of the two-year statute of limitations established by Neb. Rev. Stat. § 25-222 for claims of professional negligence.  Neb. Rev. Stat. § 25-222 states:

> Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; PROVIDED, **if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier**; AND PROVIDED FURTHER, that in no event may any action be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action.

(Emphasis added.)

The plaintiff's claims of medical malpractice accrued in January of 2004 when the alleged acts of invasion of her body occurred at the hospital.  See generally Seevers v. Potter, 537 N.W.2d 505 (Neb. 1995): "[T]he statute of limitations on professional negligence claims begins to run upon the occurrence of the alleged act of negligence." Id. at 509.  "In other words, the statute of limitations begins running upon the occurrence of

the professional negligence alleged, not when the plaintiff realizes the damage caused by the negligence." Id. at 511.

Under Nebraska law, the "occurrence rule" is the usual rule for accrual of a cause of action. "An action accrues and the statutory time within which the action must be filed begins to run when the injured party has the right to institute and maintain a lawsuit, although the party may not know the nature and extent of the damages." Hoeft v. Five Points Bank, 539 N.W.2d 637, 645 (Neb. 1995), *citing* Association of Commonwealth Claimants v. Moylan, 517 N.W.2d 94 (Neb. 1994). See also Hroch v. Farmland Industries, Inc., 548 N.W.2d 367, 371 (Neb. App. 1996) *quoting* Grand Island School Dist. # 2 v. Celotex Corp., 279 N.W.2d 603, 606 (Neb. 1979):

> The traditional rule is that the statute begins to run as soon as the action accrues, and the cause is said to accrue when the aggrieved party has the right to institute and maintain a suit. In a contract action this means as soon as breach occurs, and in tort, as soon as the act or omission occurs. These rules would apply even though the plaintiff was then ignorant of the injury sustained or could not ascertain the amount of his damages.

The plaintiff states that she did not actually discover the implantation of a GPS device in her abdomen until 2006, and she relies on the "discovery" clause in Neb. Rev. Stat. § 25-222 to toll the statute of limitations until 2006. However, the discovery clause tolls the commencement of the statute of limitations only if the cause of action **both** was not discovered and **could not reasonably have been discovered** within the two-year limitations period. The statute begins to run "**within one year ...** from the date of such discovery **or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier**." Id. A person who goes to the hospital complaining of a problem with her eye and leaves several days later after abdominal surgery has been

5

placed on notice of facts which would reasonably lead to the discovery of a cause of action related to the abdominal surgery, even if the details of the extraction of internal organs and implantation of a GPS device were unknown at that time.  Abdominal surgery involving the removal of organs and implantation of a device is not the kind of experience which can go unnoticed by a patient who experiences the procedure after arriving at the hospital for treatment of her eye.  Therefore, Creighton and Tenet correctly argue that the applicable statute of limitations bars the plaintiff's claims against them.

THEREFORE, IT IS ORDERED:

1. That Filing No. 8, Creighton's Motion to Dismiss, is granted;

2. That Filing No. 11, Tenet's Motion to Dismiss, is granted;

3. That Filing No. 14, the United States' Motion to Dismiss, is granted;

4. That Filing Nos. 18 and19, the plaintiff's Requests for Production, are denied as moot; and

5. That judgment will be entered in accordance with this Memorandum and Order.

DATED this 2nd day of April, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge